# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
October 30, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

MICHAEL REDWINE,

*Plaintiff*,

v.

SUSAN GALLOWAY, ET AL.,

*Defendants*.

CASE NOS. 3:26-CV-00039

JUDGE NORMAN K. MOON

## MEMORANDUM OPINION & ORDER

Plaintiff Michael Redwine ("Redwine"), a former long-time employee of the University of Virginia ("UVA"), is suing his former supervisors—Susan Galloway ("Galloway"), Reba Childress ("Childress"), and Jill Melton ("Melton"). Dkt. 40. He claims they interfered with the Family Medical Leave Act ("FMLA") leave he needed while suffering from complications from COVID. *Id.* He also claims they retaliated against him for taking said leave and complaining about how UVA accounted for that leave upon his return to work. *Id.* He seeks reinstatement, back pay, and back benefits, among other things. *Id.*

Galloway, Children, and Melton (collectively, "Defendants") move to dismiss his FMLA claims arguing: (1) they are immune from suit as state employees who were performing official duties; (2) Redwine has not alleged his eligibility under the FMLA;[1] (3) Redwine has not alleged

---

[1] Defendants appear to abandon their eligibility argument in their reply. Dkt. 48. Because there are several other reasons for dismissal, the Court will not address this argument.

any interference with his FMLA rights; (4) Redwine has not alleged any facts to support a retaliation claim; and (5) his claims are time-barred. Dkt. 43. For the reasons that follow, their motion to dismiss will be granted.

## I. BACKGROUND

Redwine allegedly suffered a serious health condition following COVID-19. Dkt. 40 ¶ 31. He began taking FMLA leave in late February 2022 and returned to work (at least part-time) on April 4, 2022. *Id.* ¶¶ 31–49. Upon his return to work, he worked twenty hours per week and took twenty hours of FMLA leave each week. *Id.* ¶ 52. On July 1, 2022, Redwine sought a transfer because the "existing work structure was not resolving [his] return [to work] difficulties." *Id.* ¶ 55. Rather than receiving a transfer, Redwine was informed on July 21, 2022, that he had exhausted his FMLA leave and that "continued absences could result in disciplinary action." *Id.* By Redwine's own admission, by July 2022, he had used approximately 560 hours of leave (240 hours of continuous leave between February 21 to April 1; and 320 hours of intermittent leave [20 hours per week] between April 1 and July 21).[2] *Id.* ¶¶ 68–70. The FMLA only provides 480 hours of self-care leave. 29 U.S.C. § 2612(a)(1).

Despite this concession, Redwine baldly asserts that he had more unexhausted FMLA leave and that UVA improperly classified his FMLA as continuous even though he had only been taking intermittent leave since returning to work on April 4, 2022. *Id.* ¶¶ 14, 48, 61, 63. According to him, UVA interfered with his continuing ability to take intermittent leave between July and September

[2] This is a conservative estimate because Redwine further admits that he experienced additional "medically necessary absences" between June and September 2022, Dkt. 40 ¶ 80, and that because of "recurring fatigue, medication-related effects, or other symptoms" he would stop working before completing his four-hour workday, *id.* ¶ 82.

2022 by informing him that he had no more leave available and that he would either need to take an extended, unpaid medical leave or risk termination. *Id.* ¶¶ 80–93.

On October 13, 2022, Redwine initiated the short-term disability process, which UVA granted. *Id.* ¶ 119. He was on short-term disability from approximately October 13, 2022 to June 16, 2023, and he never returned to work during this time. *Id.* ¶¶ 119–123. When his short-term disability benefits expired, he pursued long-term disability benefits; however, his application for long-term disability was denied on June 16, 2023. *Id.* ¶ 124. UVA terminated him that same day. *Id.* On the date of his termination, he had not worked full-time in approximately sixteen months. *Id.* ¶ 140 (FMLA leave began in February 2022); ¶ 162 (termination occurred on June 16, 2023).

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. Challenges to jurisdiction under Rule 12(b)(1) may be raised as either "facial attacks" or "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986). No matter the type of challenge brought, the plaintiff "has the burden of proving that subject matter jurisdiction exists." *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Here, Defendants raise a factual attack, arguing they are immune from suit.

A factual attack challenges the complaint's jurisdictional allegations. In this situation, the "district court is to regard the [] allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *Richmond*, 945 F.2d at 768. The district court "may consider evidence by affidavit [or] depositions" in making its determinations. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (citing *Mims v.*

*Kemp*, 516 F.2d 21 (4th Cir. 1975)). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction," unless of course the "jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Id.*

### B. Fed. R. Civ. P. 12(b)(6)

To resolve Rule 12(b)(6) motions, the Court applies the familiar *Twombly*/*Iqbal* standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). Moreover, because Plaintiff is proceeding *pro se*, the Court must liberally construe his complaint. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, the Court need not draw inferences that are "unsupported by facts alleged in the complaint." *Green v. McHugh*, 793 F. Supp. 2d 346, 349 (D.D.C. 2011); *see also Grigg v. Montana Dep't of Justice, et al.*, 2026 WL 1134159, at *2 (D.N.D. Feb. 4, 2026).

## III. ANALYSIS

### A. Sovereign Immunity

Defendants argue that UVA is immune from suit, and by extension, its employees are also immune. Dkt. 43 at 9–17. The Eleventh Amendment protects states from being sued without their consent. *See Alden v. Maine*, 527 U.S. 706, 713 (1999). This is known as sovereign immunity. *See Singleton v. Md. Tech. & Dev. Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024). "When a [state] properly asserts its sovereign immunity in a suit, the federal courts lack jurisdiction to proceed any further against it." *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 428–29 (4th Cir. 2025). Sovereign immunity also "'extends to state agencies and other governmental entities that can be

viewed as arms of the state,'" *Doe v. Univ. of N.C. Sys.*, 133 F.4th 305, 313 (4th Cir. 2025) (quoting *Singleton*, 103 F.4th at 1047), and employees of the states who are sued for "actions [that are] tied inextricably to their official duties." *Lizzi v. Alexander*, 255 F.3d 128, 131 (4th Cir. 2001); *see also Martin v. Wood*, 772 F.3d 192, 193 (4th Cir. 2014).[3]

At the threshold, the Court must consider whether UVA is immune before considering whether Defendants are immune by association. As chance would have it, the Court just considered this question and issued a Memorandum Opinion holding that UVA is an arm of the state and is thus entitled to sovereign immunity. *See Young v. UVA*, 2026 WL 3152701, at *3 (W.D. Va. Oct. 21, 2026). Because UVA, as an arm of the Commonwealth of Virginia, is generally immune, it can only be sued if the Virginia General Assembly or Congress abrogates that immunity. But Congress has not validly abrogated the states' Eleventh Amendment immunity for suits involving the FMLA's self-care provisions. *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 37-38 (2012). Accordingly, UVA would be immune from Redwine's FMLA claims if it were a party to this lawsuit. The question posed then is whether Galloway, Childress, and Melton—as UVA's employees—are also shielded by Eleventh Amendment immunity.

To determine whether Defendants are protected by UVA's sovereign immunity, the Court considers five factors:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties;
>
> (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State;
>
> (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State;

[3] State employees who are sued in their individual capacities are entitled to qualified immunity when their conduct is "inextricably tied to their official duties," because under those circumstances the state is "the real party in interest." *Martin*, 772 F.3d at 193.

(4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and

(5) were the state officials' actions ultra vires.

*Martin*, 772 F.3d at 196. This five-factor test helps answer the question of whether state employees are being sued for their *own* conduct or whether the plaintiff is really suing the state for its employees' official actions. *Id.*

There is no question that Galloway, Childress, and Melton were performing their official duties as UVA employees when they interacted with Redwine about his FMLA leave. *E.g.*, Dkt. 40 ¶ 154. As Redwine's supervisors (and an HR liaison), Galloway, Childress, and Melton oversaw Redwine's work, processed his disputes, counseled him on UVA's position that his FMLA benefits had expired, and warned him about the repercussions of not returning to work full-time. *Id.* ¶¶ 7–8, 14–17, 56–57, 61–66, 94–117. There are no allegations that Galloway, Childress, and Melton had a personal interest in the outcome of Redwine's FMLA requests or that they exceeded any power delegated to them by UVA. At most, he alleges that UVA made a mistake in calculating his FMLA leave and that Defendants perpetuated this mistake. *E.g.*, *id.* ¶ 154. But making a mistake in the performance of official duties does not convert an employee's conduct into non-state action. *Cf. Carter v. Martin*, 2013 WL 593777, at *4 (S.D. Ill. Jan. 28, 2013) ("a mistake [] may have been made by a state employee exercising his official duties . . .[but] the factual allegations [] do not allege that [the state employee] acted outside the scope of his employment."). Moreover, by seeking back pay, benefits, and reinstatement, Redwine clearly shows his cards. *Id.* at 18. He's suing UVA, which could facilitate his requested relief; not Galloway, Childress, and Melton, none of whom could.[4]

---

4 Only UVA can provide back pay, benefits, and reinstatement.

Because Galloway, Childress, and Melton never stepped outside of their official roles when addressing Redwine's FMLA requests and complaints and because the relief Redwine seeks can only be provided by UVA, Defendants are entitled to sovereign immunity and the claims against them must be dismissed.

**B. FMLA Interference**

Even if Defendants are not immune,[5] though, Redwine's FMLA interference claim still fails on the merits. Under the FMLA, eligible employees are entitled to "12 workweeks of leave" during a 12-month period for a qualifying "serious health condition that makes the employee unable to perform the functions of" his job. 29 U.S.C. § 2612(a)(1)(D). This right, among others, is "prescriptive" and are generally known as "interference" or "entitlement" claims. *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 795 (4th Cir. 2023). The elements of an FMLA "interference" claim are: (1) the employee is entitled to an FMLA benefit; (2) the employer interfered with the provision of that benefit; and (3) that interference caused the employee harm. *Id.* (citing *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015)). "The FMLA provides no relief unless the employee has been prejudiced by the violation." *Id.* (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

Redwine's interference claim fails for a fundamental reason. The FMLA only entitled Redwine to three months of leave; and no matter how you slice it, UVA provided him with more than three months of leave. *E.g.*, Dkt. 40 ¶¶ 68–70, 119–124. In fact, UVA went above and beyond

---

5 In its *Young* decision, this Court called into question whether the Fourth Circuit would continue to find Virginia's public universities are arms-of-the-state after applying *Galette v. N.J. Transit Corp.*, 607 U.S. 509, 519 (2026). *See Young,* 2026 WL 3152701, at *3–7. Ultimately, though, this Court found it was bound by prior Fourth Circuit precedent, which held that Radford—a university with a similar legal structure to UVA—was an arm-of-the-state. *Id.* *7 (citing *Richard Anderson Photography v. Brown*, 852 F.2d 114, 115 (4th Cir. 1988)).

its statutory duties to accommodate Redwine's medical issues by extending him leave well after he exhausted the 480 hours provided by § 2612(a)(1)(D).

Because there was no FMLA violation and because he suffered no harm, his interference claim fails as a matter of law and must be dismissed.

### C. FMLA Retaliation

Redwine's retaliation claim also fails as a matter of law. To establish a *prima facie* case of retaliation, Redwine must demonstrate "(1) he engaged in a protected activity, (2) the employer acted adversely against him, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).

The Court previously considered Redwine's retaliation claim when it screened his original complaint pursuant to 28 U.S.C. § 1915(e). *See* Dkt. 6 at 4–5. But in that prior analysis, which was undertaken without the benefit of briefing, the Court did not fully appreciate the clear break in the causal connection between Redwine's termination and his request for FMLA leave or his complaints about his leave accounting. All of Redwine's asserted protected activity occurred between February and October 2022. *See generally*, Dkt. 40. But UVA did not fire Redwine in 2022. *Id.* Instead, UVA provided him with eight additional months of leave and only terminated him in June 2023 when he could not return to work full-time after sixteen months of non-existent or intermittent performance. Given this timeline, no reasonable factfinder could infer that UVA fired Redwine for taking FMLA leave or complaining about how UVA accounted for that leave. If

his alleged protected activity in 2022 was the "but for" cause of his termination,[6] UVA would have terminated him at least eight months earlier than it did.

Accordingly, Redwine has not alleged sufficient facts to show that his FMLA leave was the but for cause of his termination and, therefore, his retaliation claim must be dismissed.

### D. Statute of Limitations

Finally, Defendants argue that Redwine's claims are barred by the FMLA's two-year statute of limitations. Dkt. 43 at 23–24 (citing 29 U.S.C. § 2617(c)(1)). They are right.

As the Court previously noted, Redwine's claims could only be timely if Defendants willfully violated the FMLA. *See* Dkt. 6 at 3–4. But "[a]ttempts to accommodate an employee's disability or condition [ ] indicate a lack of willfulness on the employer's part." *Bosse v. Balt. County*, 692 F. Supp. 2d 574, 583 (D. Md. Mar. 10, 2010). As noted above, UVA (and Redwine's supervisors) went above and beyond to accommodate his medical issues and fully complied with FMLA. Therefore, there are no allegations supporting a finding of willfulness sufficient to trigger the FMLA's 3-year statute of limitations. Given this, Redwine's claims clearly run afoul of the two-year statute of limitation and must be dismissed as untimely.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' motion to dismiss (Dkt. 42). Because Redwine has been given multiple opportunities to state his claims and has failed to do so, the Court dismisses his FMLA claims with prejudice.

---

6 *See Fondungalla v. Montgomery Cnty.*, 2026 WL 787954, at *6 (D. Md. Mar. 20, 2026) ("[r]etaliation claims...require the employee to show that retaliation was a but-for cause of a challenged adverse employment action.") (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)).

The Clerk shall provide a copy of this Order to Redwine at his last known address and to all counsel of record and shall strike this case from the Court's active docket.

It is so ordered.

Entered this 30th day of October, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE